Filed 3/19/24  P. v. Young CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DENEAL D. YOUNG,<br><br>Defendant and Appellant. | B324008<br><br>(Los Angeles County<br>Super. Ct. No. TA024815) |

APPEAL from an order of the Superior Court of Los Angeles County, Allen J. Webster, Judge.  Affirmed.

Edward Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Chief Assistant Attorney General, Susan Pithey, Assistant Attorney General, Wyatt Bloomfield and Christopher Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In 1994, a jury convicted Deneal Deshawn Young of second degree murder and attempted murder. Young now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] The trial court concluded Young did not make a prima facie showing of eligibility for resentencing relief because he was convicted of second degree murder as a direct aider and abettor. Young contends the trial court improperly relied on a prior appellate court opinion to determine he was ineligible for relief. He also argues ambiguities in the jury instructions and the prosecutor's statements during closing argument allowed the jury to convict him without finding he personally harbored malice. We find the record conclusively establishes Young's ineligibility for resentencing and affirm the trial court's denial of Young's petition.

## BACKGROUND

### *The underlying offense*

We take our statement of the facts underlying Young's crime from the Court of Appeal opinion affirming the judgment of

———————————————

[1] All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We therefore refer to the statute as section 1172.6 for the remainder of this opinion.

2

conviction.  (*People v. Young* (Nov. 13, 1996) B093511) [nonpub. opn.] (*Young*).)[2]

"On May 17, 1993, Victor [Manual Felix] and [his brother, Epifanio] Felix drove to 106th Street so Victor could sell Young cocaine.  They drove in Victor's brown Chevette.  As they passed a certain address, Victor said he was looking for Young.  When they returned to the address a minute or two later, Young was in the driveway.  Victor and Young went into a house at 913 East 106th Street.  Epifanio saw some people looking out of the adjacent house at 915 East 106th Street.

"In a few minutes, Victor came out of the house at #913, took a grocery bag from the back seat of his car and went back inside #913.  Meanwhile a man holding a semi-automatic gun stood by the car watching Epifanio.  Victor did not have the grocery bag with him when he and Young came out of #913.  Victor went to talk to Young after Epifanio told him about the man with the gun.  Young called to the man with the gun, who walked over to Young.  After speaking with Young, the man went into the house at #915.  Epifanio told Victor he wanted to leave, but Victor said he was waiting for some money.

"Young took a telephone from his pocket and made a call.  Thereafter, a woman Epifanio had previously seen at Young's residence on 103rd Street drove up.  Young spoke to the woman, and then she left.  Young went back to #913 and made another

---

[2]     At Young's request, we took judicial notice of records from *Young*, including the reporter's transcript of Young's 1994 trial.  We refer to the factual background from *Young* only "for background purposes and to provide context for the parties' arguments."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2 (*Flores*).)

3

phone call. Young then went into #915. A man with a gun came up and ordered Epifanio out of the car. Then two other men (one of whom was the man who had previously been at the car with the gun) came out of #915. Victor looked surprised. The two men took Victor into #913. Then the third man took Epifanio into #913.

"The inside of #913 was completely empty. Young was not present at this point. Victor and Epifanio were put face down on the floor of the living room. Their wallets and money were taken and they were tied up. Someone shot Victor. Then Epifanio was shot in the neck. Victor was then shot a second time. Epifanio did not see who fired the shots. He remained still to avoid being shot again. When the men had gone, Epifanio checked on Victor, who seemed to be alive, but was choking. Epifanio went out the back door of #913. As he approached 105th Street, a man yelled at him, chased him and shot at him. Epifanio ran and finally found someone who called 911. Victor's body was found two days later under a pile of grass clippings about two blocks from 913 106th Street. He had been shot in the back of the head and the thigh."

### The underlying proceedings

The People charged Young with murder (§ 187, subd. (a)) and attempted murder (§§ 664, 187, subd. (a)). The attempted murder count included an allegation that Young acted willfully, deliberately, and with premeditation. Both counts included a firearm enhancement (§ 12022, subd. (a)(1)).

At trial, the court instructed the jury, in relevant part, on murder (CALJIC No. 8.10); two theories of first degree murder—deliberate and premeditated murder (CALJIC No. 8.20) and first degree felony murder (CALJIC No. 8.21); aiding and abetting

4

principles specific to first degree felony murder (CALJIC No. 8.27); second degree murder (CALJIC No. 8.30); and attempted murder (CALJIC No. 8.66). The court also instructed the jury on general principles of aiding and abetting liability (CALJIC Nos. 3.00, 3.01), and express and implied malice (CALJIC No. 8.11). The court further instructed the jury with CALJIC No. 3.31, which advised that the jury could find Young guilty of the crimes charged only if it found "a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator." The jury was not instructed on the natural and probable consequences doctrine.

The jury convicted Young of second degree murder and attempted murder and found true the firearm enhancement as to both counts. The jury found not true the allegation that Young acted willfully, deliberately, and with premeditation as to the attempted murder. The court sentenced Young to an aggregate term of 26 years to life, consisting of 15 years to life for the second degree murder count plus one year for the firearm enhancement, and a consecutive term of nine years for the attempted murder count plus one year for the firearm enhancement.

Young filed a direct appeal. This Division affirmed the judgment. (*Young*, *supra*, B093511.)

***Young's petition for resentencing***

In January 2019, Young filed a pro. per. petition for resentencing under section 1172.6, alleging he could not be convicted of second degree murder because he was not the actual killer, he did not act with the intent to kill, he was not a major

5

participant in a felony who acted with reckless indifference to human life, and the victim was not a peace officer.[3]

The People filed an opposition arguing Senate Bill No. 1437's amendments to the Penal Code violated the California Constitution. Young filed a reply through counsel. The People filed a supplemental opposition contending that even if Senate Bill No. 1437 is constitutional, Young was ineligible for resentencing relief because, in the direct appeal from Young's convictions, the appellate court found there was sufficient evidence that Young directly aided and abetted the murder and attempted murder.

In August 2022, the court held a hearing on Young's petition. The court referenced the Court of Appeal opinion, explaining the "appellate court made a ruling that Mr. Young aided and abetted this particular murder that occurred . . . ." The trial court stated that it had "to use the remittitur as some basis for trying to decide what's going on in all of these cases" and expressed doubt that it had to "move forward" with the petition "because the appellate court has already decided exactly." The

---

[3]     Young's petition requested resentencing under Senate Bill No. 1437 (2017–2018 Reg. Sess.) on his second degree murder conviction. After he filed his petition, Senate Bill No. 775 (2021–2022 Reg. Sess.) was enacted, extending resentencing relief for some attempted murder convictions. Young did not file an amended petition or otherwise request resentencing on his attempted murder conviction. As a result, only Young's challenge to the trial court's denial of his request for resentencing on the second degree murder conviction is properly before this court. We reject Young's argument that we should consider the application of section 1172.6 to his attempted murder conviction since he has not sought resentencing in the trial court in the first instance.

court concluded, "based on reading the transcripts, reading the remittitur, and . . . making a finding based on the law that's presented to the court," that Young was not eligible for relief. Young timely appealed.

## DISCUSSION

### I.    Senate Bill Nos. 1437 and 775

Senate Bill No. 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule.  (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)  The bill amended section 188 by adding the requirement that, except as stated in section 189, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  Among other things, Senate Bill No. 775 expanded Senate Bill No. 1437's mandate by eliminating the natural and probable consequences doctrine as a means of finding a defendant guilty of attempted murder.  (§ 1172.6, subd. (a).)

However, a principal in a murder, including an aider or abettor, may still be criminally liable if he or she personally possesses malice aforethought, whether express or implied. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639–640; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 [Senate Bill No. 1437 did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator' "].)

7

Senate Bill No. 1437 also created a procedure, now codified at section 1172.6, for a person convicted under the former law of a qualifying offense to seek resentencing if he or she could no longer be convicted of that offense under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.)  A defendant commences the procedure by filing a petition containing a declaration that, among other things, the defendant could not presently be convicted of murder or attempted murder under the current law.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  In relevant part, the statute requires the court, "[a]fter the parties have had an opportunity to submit briefings," to "hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause.  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."  (§ 1172.6, subd. (c).)

## II.    Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid*.)  Courts may not reject the petitioner's allegations " 'on credibility grounds' " or " 'engage in factfinding involving the weighing of evidence or the exercise of discretion.  [Citation.]' " (*Id*. at pp. 971, 972.)  Rather, "[t]he record should be consulted at the prima facie stage only to

determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 54–56 (*Harden*) [considering jury instructions and verdicts to determine whether the defendant made prima facie showing of eligibility]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 (*Ervin*) [considering sentencing enhancements, jury instructions, closing arguments, and verdicts at prima facie stage].)

A petitioner fails to make a prima facie showing for relief "if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.) The trial court's denial of a sentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which appellate courts review de novo. (*Ervin*, *supra*, 72 Cal.App.5th at p. 101; see *Flores*, *supra*, 76 Cal.App.5th at pp. 986–992.)

## III. The Record of Conviction Conclusively Establishes Young is Ineligible for Relief

### A. Any error by the trial court in relying on *Young* does not warrant reversal

Young claims reversal is necessary because the trial court

9

impermissibly relied on this court's opinion in the direct appeal in determining his eligibility for relief. We conclude any error does not warrant reversal.

In the direct appeal, Young argued the trial court erred by failing to instruct the jury on the natural and probable consequences doctrine. (*Young*, *supra*, B093511.) This court rejected the argument, explaining that the trial court instructed the jury on the offenses of direct aiding and abetting murder and attempted murder, and further concluding substantial evidence supported the jury's verdicts. (*Ibid*.)

At the hearing on Young's section 1172.6 petition, the trial court referred to this court's prior opinion several times. The trial court primarily appeared to reference the opinion's statement that the jury was not instructed on the natural and probable consequences doctrine, a fact that was also reflected elsewhere in the record of conviction. Those references were appropriate. (*Lewis*, *supra*, 11 Cal.5th at p. 972 [appellate opinions are generally considered part of the record of conviction].)

However, the trial court also commented that the appellate court reviewed the evidence and made a finding that Young acted as a direct aider and abettor. To the extent the trial court considered the appellate opinion as the source of a binding prior factual finding, this reliance was misplaced. Fact-based holdings in a prior appellate opinion are not law of the case that necessarily foreclose resentencing relief. (*Harden*, *supra*, 81 Cal.App.5th at p. 50.) Further, the court in *Young* had no occasion to consider whether, despite the absence of a natural and probable consequences instruction, Young was nonetheless convicted on a theory in which malice was imputed to him based

10

solely on his participation in a crime.

But even if the trial court improperly relied on the prior appellate opinion, any error does not mandate reversal. As we explain below, our de novo review indicates the record of conviction conclusively establishes Young is ineligible for relief under section 1172.6 as a matter of law. (See, e.g., *People v. Mejorado* (2022) 73 Cal.App.5th 562, 572 [error in failing to appoint counsel harmless "if we can determine that the record of conviction ' " 'contain[s] facts refuting the allegations made in the petition' " ' "], review granted Mar. 23, 2022, S273159, review dism. Oct. 12, 2022.) The trial court's ultimate conclusion was correct and, " ' "if [a trial court's] ruling was correct on any ground, we affirm." ' [Citation.]" (*People v. Brooks* (2017) 3 Cal.5th 1, 39.)

**B.    The jury instructions required the jury to find Young personally acted with malice**

In Young's underlying case, the trial court did not instruct the jury on the natural and probable consequences doctrine. And although the trial court instructed the jury on first degree felony murder, the jury *rejected* the felony murder theory. Instead, the jury found Young guilty of aiding and abetting second degree murder and of aiding and abetting an attempted murder arising out of the same shooting. The attempted murder conviction required the jury to find that Young "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." (CALJIC No. 8.66.)

Young nonetheless contends the definitions of principals in CALJIC No. 3.00, aiding and abetting in CALJIC No. 3.01, and attempted murder in CALJIC No. 8.66, did not adequately explain to the jury that it had to find Young personally acted

11

with malice to convict him of aiding and abetting murder. He asserts ambiguities in the jury instructions combined with the prosecutor's statements during the closing argument allowed the jury to convict him of second degree murder by imputing malice to him. We review the instructions to evaluate his claim.

CALJIC No. 3.00, as given in this case, instructed the jury that "[t]he persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include, one, those who directly and actively commit or attempt to commit the act constituting the crime, or two, those who aid and abet the commission or attempted commission of the crime."

CALJIC No. 3.01 then elaborated that "[a] person aids and abets the commission of a crime when he or she, one, with knowledge of the unlawful purpose of the perpetrator and two, with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages, or instigates the commission of the crime."

The court further instructed the jury with CALJIC No. 8.66, which provided, in relevant part: "Every person who attempts to murder another human being is guilty of a violation of sections 664 and 187 of the Penal Code. Murder is the unlawful killing of a human being with malice aforethought. [¶] In order to prove such crime, each of the following elements must be proved: [¶] One, a direct but ineffectual act was done by one person towards killing another human being; and, [¶] [t]wo, the person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

Young contends CALJIC No. 3.00 is deficient because it "conflicts with" the California Supreme Court's decision in *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*), which established that aiders and abettors must personally know " ' "the full extent of the perpetrator's criminal purpose . . . ." ' " We find no such conflict.

In *McCoy*, the court held an aider and abettor may be found guilty of a greater offense than the direct perpetrator. The Court reasoned that when " 'joint participants in a crime are tied to a "single and common *actus reus*," ' " "each person's guilt would be based on the combined actus reus of the participants, but also solely on that person's own mens rea. Each person's level of guilt would ' "float free." ' [Citation.]" (*McCoy*, *supra*, 25 Cal.4th at pp. 1118–1119, 1121.) " 'When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." [Citation.]' [Citation.]" (*Id*. at p. 1118.) Thus, when a defendant is charged with aiding and abetting a murder, "the aider and abettor must know and share the murderous intent of the actual perpetrator." (*Ibid*.)

In *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433 (*Bryant*), the California Supreme Court explained that former CALJIC No. 3.00, which was given at Young's trial, "generally stated a correct rule of law. All principals, including aiders and abettors, are 'equally guilty' in the sense that they are all criminally liable." While the court indicated the instruction "could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the

13

instruction to preclude such a finding," the concern in this case is not whether the jury may have mistakenly believed Young might be guilty of the same crime as the direct perpetrators. (*Ibid*.) That the former version of CALJIC No. 3.00 could be misleading is only relevant if any imprecision in the instruction allowed the jury to convict Young on a theory of imputed malice. It did not. (*People v. Burns* (2023) 95 Cal.App.5th 862, 868–869 (*Burns*) [use of " 'equally guilty' " language in former CALCRIM No. 400 "did not operate to offer the jury a theory of legal liability that can no longer support a conviction for murder as a result of the recent statutory changes"].)

Reading CALJIC No. 3.00 "in the context of the instructions and record as a whole" (*People v. Vang* (2022) 82 Cal.App.5th 64, 84), it is clear the jury found Young personally possessed a particular mental state—specifically, knowledge of the unlawful purpose of the shooters and the specific intent to encourage or facilitate the killing—to find him guilty of murder. CALJIC No. 3.01 informed the jury it could hold Young liable for murder as an aider and abettor only if it concluded he aided, promoted, encouraged, or instigated the commission of the murder "(1) *with knowledge of the unlawful purpose of the perpetrator and* [¶] (2) *with the intent or purpose of committing, encouraging, or facilitating the commission of the crime . . . .*" (Italics added.) This was consistent with *McCoy*'s holding requiring an aider and abettor to share a direct perpetrator's specific intent, resolving any ambiguity potentially created by CALJIC No. 3.00. (*People v. Johnson* (2016) 62 Cal.4th 600, 640–641; *Bryant, supra,* 60 Cal.4th at p. 434; *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 919, 918 [CALJIC No. 3.01 "sufficiently explained" that defendants had to share the intent to

kill to be " 'equally guilty' " under CALJIC No. 3.00 as aiders and abettors of murder and attempted murder].)  The jury had to consider CALJIC No. 3.00 in light of CALJIC No. 3.01.

Young cites *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) to support his argument that CALJIC No. 3.01 also failed to unambiguously require the jury to find that Young, as an aider and abettor, personally acted with malice.  However, his reliance on *Langi* is misplaced.  In *Langi*, the jury rejected a felony murder theory, but found the defendant guilty of second degree murder, robbery, and battery.  The *Langi* court reasoned that because the instruction for second degree implied malice murder did not require a finding that the perpetrator intended to kill, the aiding and abetting jury instructions left open the possibility that the jury convicted the appellant for intending to aid the perpetrators' intentional acts, without necessarily possessing an intent to aid or encourage the victim's killing.[4]  (*Id.* at p. 983.)

As an initial matter, Young is incorrect that the jury's rejection of the first degree murder theories implicitly means the jury found Young guilty of second degree murder based on a theory of implied malice.  Young's argument is entirely inconsistent with the jury instructions.  The jury was instructed on two theories of first degree murder: felony murder occurring in the commission of a robbery, and willful, deliberate, and premeditated murder.  The jury was separately instructed on malice aforethought and second degree murder, and informed that a second degree murder is a killing with malice aforethought

---

[4]     Although the jury at Young's trial was instructed generally on implied malice, in contrast to *Langi*, the trial court here did not instruct the jury with CALJIC No. 8.31 defining second degree implied malice murder.

15

"when there is manifested an intention unlawfully to kill a human being, but the evidence is insufficient to establish deliberation and premeditation."

The court distinguished between "malice aforethought" and deliberation, explaining that "[t]he word 'aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act." Additionally, the jury was instructed with CALJIC No. 8.20, which distinguished intent from premeditation and deliberation by stating that "a mere unconsidered and rash impulse, *even though it include*[*s*] *an intent to kill*, is not such deliberation and premeditation as will fix an unlawful killing as murder of the first degree." (Italics added.) (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1270 ["premeditation and deliberation is not synonymous with malice aforethought [citation]; it requires 'substantially more reflection' "].) Likewise, the jury was given separate instructions regarding felony murder that explained the elements of that crime, without suggesting the jury could find Young guilty of either attempted murder or second degree murder without concluding Young harbored the intent to kill.

The prosecutor also distinguished between the theories, telling the jury: "Say we didn't have a felony. Let's put that felony murder rule and robbery out of the question. I'd be telling you the definition of murder is the unlawful killing of a human being with malice aforethought. What is [*sic*] malice aforethought mean? . . . [¶] Malice aforethought is defined in instruction [CALJIC No.] 8.11, and malice aforethought is essentially what you need to know here. It's killing someone when you intend to kill them. In other words, it's not an

16

accident. If you intend to kill someone and you kill them, that intent is what we call malice aforethought. [¶] That is the important definition of malice aforethought."

The jury instructions properly reflected the distinctions between the three legal theories and the necessary mental states as to each. Young's argument that the jury's rejection of first degree murder categorically indicated it found Young acted with implied malice therefore misstates the law and is contradicted by the record.

Further, the jury's findings on both counts eliminated any possibility that it found Young guilty of second degree murder on an implied malice theory. The jury found Young guilty of attempted murder and second degree murder arising out of the same incident. The court instructed the jury with CALJIC No. 8.66, which provided that to prove attempted murder, the People must establish "a direct but ineffectual act was done by one person towards killing another human being" and that "the person committing such act harbored *express malice aforethought*, namely, a specific intent to kill unlawfully another human being." (Italics added.) To convict Young of attempted murder as a direct aider and abettor, the jury had to conclude under CALJIC No. 3.01 that he knew of the direct perpetrator's intent to kill, and that Young aided the commission of attempted murder with the purpose of killing. The jury found Young guilty of attempted murder, and we presume it correctly understood and applied CALJIC No. 3.01. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

In *People v. Coley* (2022) 77 Cal.App.5th 539, 547 (*Coley*), as in this case, the defendant was convicted of murder based on his aiding and abetting the same shooting that gave rise to his

17

conviction for attempted murder. We agree with the *Coley* court that under those circumstances, "by finding [the defendant] guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the second degree murder." (*Ibid*.; see *People v. Young* (1987) 189 Cal.App.3d 891, 910 [finding that because the requisite mens rea for first degree murder was express malice, "the jury necessarily found express malice on the attempted murders committed as part of a single, indivisible transaction"].) Young does not challenge the applicability of this principle to his case. Thus, while nothing in the record of conviction in *Langi* resolved any ambiguity created by CALJIC No. 3.01 with respect to implied malice murder, here the jury necessarily found Young personally acted with express malice in committing both attempted murder and second degree murder.

Young asserts *Coley* is distinguishable because an ambiguity in the attempted murder instruction also allowed the jury to convict him of attempted murder by imputing express malice to him. He cites the instruction's requirement that the jury find "one person" performed an act toward the attempted killing and "the person" harbored express malice, without specifying that this "person" must be the defendant.

This argument is unavailing because it views the attempted murder instruction in isolation and not in the context of the record of conviction as a whole. The prosecutor was clear that the People were seeking to hold Young liable as an aider and abettor of both murder and attempted murder. Under CALJIC No. 3.01, to convict Young as an aider and abettor, the jury had to find that Young acted to aid, promote, encourage, or facilitate the attempted murder while sharing the direct perpetrator's

18

specific intent to kill. CALJIC Nos. 3.01 and 8.66 together did not permit the jury to interpret the generic terms in the attempted murder instruction as license to impute malice from another person to convict Young of attempted murder.

The record of conviction reflects that the jury convicted Young of second degree murder as a direct aider and abettor who shared the direct perpetrator's intent to kill.

### C. The prosecutor's statements during closing argument did not allow the jury to impute malice to Young

Young next contends that even without an express natural and probable consequences instruction, the prosecutor's statements in his closing argument "embraced" the natural and probable consequences theory, allowing the jury to impute malice to him based solely on his participation in the murder. Young cites the prosecutor's statements about Young's "leadership in marketing drugs from the subject property," which he contends the jury could have understood to mean that it could convict him of murder by finding Young aided and abetted "the promotion and sale of drugs." We again disagree.

The prosecutor referred to Young's role in orchestrating the drug sale with the Felix brothers as evidence showing Young's intent to aid and abet a robbery for purposes of first degree felony murder, which was a valid theory of liability at the time. The prosecutor explained that under this theory, "the defendant, as an aider and abettor, . . . [a]ll he had to do is aid and abet the robbery. If he was aiding and abetting the robbery, he's liable for the murder that someone else did in the course of that robbery. [¶] . . . [¶] That's what I have to prove to you. Not that the defendant intended to kill these people, but that he aided and

19

abetted a robbery." The prosecutor did not state, or even suggest, the jury could hold Young guilty of murder if it found he intended to commit any crime other than robbery.

The prosecutor and the instructions made clear that felony murder, the only imputed malice theory on which the jury could find Young guilty, was premised on the commission of a robbery. The jury unequivocally rejected this theory by finding Young guilty of second degree murder. Neither the court's instructions nor the prosecutor's comments indicated to the jury that once it declined to find Young guilty of the felony murder charge based on robbery, it could nevertheless impute malice to Young based on his aiding and abetting a different crime—selling drugs—to find him guilty of second degree murder.[5]

## IV. *People v. Curiel* is Distinguishable

While this appeal was pending, the California Supreme Court issued its decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*). At our invitation, the parties filed supplemental letter briefs discussing the applicability of *Curiel* to this matter. Having considered the parties' supplemental briefing, we conclude *Curiel* does not mandate reversal in this case.

---

[5] In a footnote, Young argues the prosecution erred in describing his actions after the shooting as evidence of aiding and abetting rather than as evidence of a lesser related offense of serving as an accessory after the fact. However, Young does not contend these comments invited the jury to convict him using an impermissible theory of imputed malice. A section 1172.6 petition is not an avenue for challenging alleged prosecutorial misconduct or sufficiency of the evidence. The remedy for any such errors was an appeal from the judgment of conviction. (*Burns, supra,* 95 Cal.App.5th at pp. 867–868.)

In *Curiel*, a jury found the defendant guilty of aiding and abetting a first degree murder by instigating a gang confrontation that resulted in another man shooting and killing the victim. The jury found true a gang-murder special circumstance allegation that required a finding that the defendant intended to kill. However, the court concluded ineligibility for resentencing relief would only be established if the record of conviction necessarily demonstrated the jury found the defendant's conduct constituted the requisite actus reus for direct aiding and abetting *and* the defendant possessed the requisite mens rea for direct aiding and abetting, even if the jury separately concluded the defendant personally had the intent to kill. (*Curiel, supra*, 15 Cal.5th at pp. 467–468.) In *Curiel*, the trial court instructed the jury on the natural and probable consequences doctrine. As such, the jury instructions did not foreclose the possibility as a matter of law that the jury found the defendant intended to aid and abet one of the target offenses (disturbing the peace or concealed carry by a gang member) and imputed malice to convict the defendant of the murder that resulted. (*Id*. at pp. 446, 467–468.)

Without specifically arguing the *Curiel* court's reasoning applies in this case, Young appears to contend the decision provides further basis for his arguments. However, in contrast to *Curiel*, Young's jury did not receive a natural and probable consequences instruction. The only theory of imputed malice presented to the jury was first degree felony murder, which the jury rejected. Under the only remaining theory of liability, direct aiding and abetting, there was no target offense other than murder which the jury could have found Young aided and abetted. (*People v. Medrano* (2024) 98 Cal.App.5th 1254, 1267.)

21

There is no basis to conclude, as the high court did in *Curiel*, that the jury here did not necessarily find Young possessed the requisite mens rea for directly aiding and abetting murder. (*Curiel*, *supra*, 15 Cal.5th at pp. 471, 467 ["our holding today does not necessarily apply to other cases where the jury found intent to kill . . . . The jury instructions in other cases might be materially different, and they might therefore have required different factual findings by the jury"].)

The record of conviction conclusively establishes Young was not convicted of second degree murder under a theory of imputed malice based solely on his participation in the crime. Thus, his petition failed to make a prima facie showing of his eligibility for resentencing under section 1172.6 as a matter of law. We therefore need not reach Young's constitutional arguments regarding the evidentiary hearing procedures in section 1172.6. We affirm the trial court's denial of Young's petition.

## DISPOSITION

The trial court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.